## APPEAL OF LOGAN & BRYAN.

Docket No. 4008.    Submitted December 11, 1925.    Decided April 21, 1926.

Where a partnership engaged in a general brokerage business acquired seats on various exchanges from its members at an agreed valuation based on their then market value, under an agreement that, at the termination of the partnership, each seat should be returned to the member in whose name it stood at its then market value, any gain or loss in the meantime to be accounted for as partnership gain or loss, *held*, that, on the dissolution of the partnership, the difference between the values at dates of acquisition and disposition constitutes gain or loss for the purpose of determining the income of the partnership under the Revenue Act of 1917.

*E. St. Clair Thompson, Esq.*, for the taxpayer.
*Thomas P. Dudley, Jr., Esq.*, for the Commissioner.

Before PHILLIPS and TRAMMELL.

### FINDINGS OF FACT.

Prior to 1917 various partnerships had conducted a general brokerage business in New York and Chicago under the firm name of Logan & Bryan. While the firm name continued the same, there were changes in the personnel of the successive partnerships. On December 30, 1916, articles of copartnership were entered into between ten individuals to carry on such business under the name of Logan & Bryan from January 1, 1917, to June 30, 1917, inclusive (referred to hereinafter as the first partnership). Such contract of copartnership remained in operation to July 31, 1917, when a new partnership (referred to hereinafter as the second partnership) was organized, consisting of nine of the ten individuals composing the first partnership and two others who were not members of the first partnership.

Upon its organization the first partnership acquired, from different members of the partnership, seats upon various exchanges where the partnership transacted its brokerage business. Such seats stood in the names of the individual members, but were contributed to the partnership as a part of the capital contribution of the members. Such seats were taken over by the partnership at their then market value and, upon the dissolution of the partnership, were returned to the respective partners in distribution at their market value at the date of such dissolution, any profit or loss occurring by reason of a change in market value being charged into the profit and loss account of the partnership and shared by all of the partners. The same procedure was followed by the second partnership.

On January 1, 1917, the first partnership acquired such stock exchange seats from the individual partners at a total valuation of $170,403. Prior to July 31, 1917, two seats which had been acquired at a valuation of $23,000 were disposed of by sale for $17,000. At the termination of the first partnership, the remaining seats were distributed to the members in whose names the respective seats stood, and received by such partners in distribution at a valuation of $117,503. During the period from January 1, 1917, to July 31, 1917, such partnership charged to its profit and loss account, as a loss upon the sale and distribution of such seats, $35,900, which was shared by all of the partners in the same proportion in which they shared other profits and losses.

The second partnership acquired from its members the seats which were distributed to them by the prior partnership and credited them with the then market value of such seats in the sum of $117,-503. At its termination on December 31, 1917, such seats were again distributed to the various members of the partnership at their then market value of $105,553, and a loss of $11,950 was charged upon the partnership books, which loss was shared by the partners in the same manner as other losses and expenses.

Excess-profits-tax returns were made by both partnerships during the taxable year. The first partnership claimed as a deduction the sum of $35,900, as a loss upon the purchase and sale and distribution of such seats, and the second partnership claimed a deduction of $11,950 for such a loss. These deductions were disallowed by the Commissioner, who determined deficiencies of $25,405.47 against the first partnership and $3,799.30 against the second partnership. These deficiencies were determined in the following manner:

Under date of March 13, 1923, the Commissioner mailed letters to each of the partnerships advising them that additional assessments were to be made against the first partnership for $26,311.03 and against the second partnership for $5,717.24. Liability for $905.56 was admitted by the first partnership and for $1,917.94 by the second partnership. Assessments of the amounts determined by the Commissioner were made without any hearing or opportunity for a hearing. Payments were made of the amounts admitted by the partnerships to be due and claims for abatement were filed by the first partnership for $25,405.47 and by the second partnership for $3,799.30. Hearings were thereafter granted on the abatement claims, and on March 13, 1925, the two partnerships were notified by the Commissioner that their claims for abatement had been rejected, and from such notice of rejection the taxpayers appeal.

OPINION.

PHILLIPS: It is conceded by the Commissioner that the stock exchange seats were partnership assets, and there does not appear to be any question concerning the values used, which affected all the partners and were arrived at by agreement between them. The Commissioner contends, however, that the distribution of the seats to the partners upon the termination of the partnership resulted in no profit or loss which is deductible by the partnership.

Under the Revenue Act of 1917, partnerships are made subject to an excess-profits tax, and, for the purpose of that tax, are treated as legal entities. A partnership is entitled to the same deductions as are allowed to individuals, and when the partnership took these seats as a contribution to its capital at their market value at that

time, with the agreement that the seats were to revert to the owners thereof at the termination of the partnership at their then market value, and such agreement is carried out, the difference between the value at which they come into the partnership and the value at which the partnership disposes of them under the agreement is a loss or a gain, for the purpose of computing the income of the partnership as well as for an accounting between the partners themselves.

There is no intention in this opinion to hold that a profit or loss results to a partnership or corporation from the distribution of its assets in kind upon liquidation. Here we have an agreement which provides, in effect, that the seat shall be purchased by the partnership on organization and sold by it at the time of dissolution. The profit or loss from the transaction arises out of the performance of the agreement and has no relation to the dissolution of the partnership. The profit or loss arising out of the agreement is to be computed in the same manner, whether the agreement is to be carried out on the date of dissolution or on some other date.

The deficiencies should be redetermined by allowing as deductions the losses claimed.

> *Order of redetermination will be entered on 10 days' notice, under Rule 50.*

On reference to the Board, JAMES dissents.